UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FILED
APR 2 1 2021
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

TERESA G.,

             Plaintiff,

   -v-

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

20-CV-0816-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff Teresa G.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 10) is denied and defendant's motion (Dkt. No. 12) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff applied for DIB on April 28, 2017, alleging disability beginning April 22, 2016.  (Tr. 328)[3]  Her claim was denied at the initial level on June 6, 2017, and again after a *de novo* hearing before an Administrative Law Judge ("ALJ").  (Tr. 137-58, 192-224, 232)  The Appeals Council denied plaintiff's request for review on May 6, 2020.  (Tr. 1-7)  This timely action followed.  (Dkt. No. 1)

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

---

[2] The Court presumes the parties' familiarity with the case.

[3] References to "Tr." are to the administrative record in this case.  (Dkt. No. 8)

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

5

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of April 22, 2016.  (Tr. 143)  At step two, the ALJ found that plaintiff had the severe impairments of obesity, degenerative disc disease (status post cervical fusion surgery), and right ankle fracture.  (Tr. 143-45)  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings.  (Tr. 145-46)  Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b)[4] except:

> [S]he can push and/or pull as much as she can lift and/or carry.  She can occasionally reach overhead with her left upper extremity.   She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  She can never climb ladders, ropes or scaffolds, work at unprotected heights nor work with moving mechanical parts.

(Tr. 146-51)  The ALJ then found that plaintiff was capable of performing her past relevant work as a retail sales clerk, retail assistant manager, and retail sales manager, ending the sequential evaluation at step four.  Although the ALJ was not required to proceed to step five, she made an alternative finding that, even if plaintiff could not perform her past relevant work, she could perform other work that existed in significant numbers in the national economy, such as the light jobs of cashier, retail marker, and furniture rental

---

[4] Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 404.1567(b).  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*; Social Security Ruling ("SSR") 83-10, 1983 WL 31251 *5.

consultant. (Tr. 151-54)  Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 154)

IV.    *Plaintiff's Challenge*

Plaintiff contends that the ALJ impermissibly formulated the RFC without relying upon a medical opinion, and the RFC was therefore unsupported by substantial evidence. (Dkt. No. 10-1 at 12-20)  The Court disagrees.

In this case, the ALJ evaluated two medical opinions of record.  The first was issued by plaintiff's pain management physician, Dr. Eugene Gosy, in December of 2016. Dr Gosy opined that plaintiff could lift no greater than 15 pounds. (Tr. 150)  In June, 2017, a state agency medical consultant, Dr. Jennifer Meyer, opined that there was insufficient evidence in the file to make a disability determination. (*Id.*)

With respect to Dr. Gosy's opinion, the ALJ acknowledged the physician's specialty in pain management, and that he had treated plaintiff's spinal and joint related pain on multiple occasions. (Tr. 150)  However, the ALJ explained that she did not find the opinion persuasive because it was not supported by his own objective findings.    (*Id.*)  For example, in the same report that Dr. Gosy restricted plaintiff to lifting 15 pounds, he found that she had had 5/5 upper and lower extremity strength. (Tr. 150; *see* Tr. 521)  During the same visit, Dr. Gosy also noted that plaintiff appeared "healthy" and well-developed, but with a positive finding of trigger points along the cervical and lumbar spine. (Tr. 521) Two months later, Dr. Gosy noted that plaintiff had 5/5 motor strength, negative straight leg raising, and again appeared "healthy." (Tr. 524)

The ALJ also found that Dr. Gosy's opinion was inconsistent with the other evidence of record. (Tr. 150)  As the ALJ discussed, Dr. Gosy's opinion was inconsistent

with objective findings which showed 5/5 motor strength and plaintiff's intact or nearly-intact sensation. (Tr. 150; *see* Tr. 524-700)  It was also inconsistent with plaintiff's testimony that lifted 30 pounds when working as a cleaner. (Tr. 150; *see* Tr. 200, 209) Finally, the ALJ noted that Dr. Gosy's opinion failed to take into account plaintiff's right-ankle fracture, and its effect on her ability to perform work-related activities. (Tr. 150) The ALJ therefore determined that Dr. Gosy's opinion was of limited value.[5]

With respect to Dr. Meyer's opinion that there was insufficient evidence to make a disability determination,[6] the ALJ found that the opinion was "neither supportable nor consistent with the overall evidence of record.  At the time she provided her opinion, there was enough evidence in the record to render an opinion . . . ." (Tr. 150-51)  Moreover, additional medical evidence received after the June, 2017, opinion "justifies a conclusion that the claimant's impairments are medically determinable and caused more than minimal functional limitations in her ability to perform work-related activities." (Tr. 150)

Plaintiff asserts that the ALJ improperly rejected Dr. Gosy's opinion, which was the only opinion in the record about plaintiff's functioning, and instead based the RFC finding on her own lay judgment. (Dkt. No. 10-1 at 13)  Relatedly, she argues that if the ALJ found  Dr. Gosy's opinion "insufficient," she should have developed the record further by re-contacting him for a clarification of his opinion or by obtaining a consultative examination. (Dkt. No. 10-1 at 18)

---

[5] Dr. Gosy's December 1, 2016, opinion states that plaintiff was "attempting to obtain a new managerial position that requires no lifting greater than 15 pounds which would be her reasonable medical limit." (Tr. 521)  It is worth noting that Dr. Gosy's opinion does not depart greatly from the ALJ's RFC finding, which restricted plaintiff to frequent lifting of 10 pounds and only occasional lifting of 20 pounds.

[6] Dr. Meyer noted that, despite contact with plaintiff and her attorney, plaintiff did not return forms regarding her work history and activities of daily living. (Tr. 237)

Contrary to plaintiff's argument, *see* Dkt. No. 10-1 at 14, the RFC finding need not be based on a medical opinion, but can be based on other evidence, such as medical findings and activities of daily living. *See* 20 C.F.R. § 404.1520(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. § 404.1545(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. § 404.1513(a)(1),(4) (evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

The Second Circuit has held that a medical opinion is not always required for the ALJ to make an RFC determination. *See Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (holding that the ALJ's RFC finding, which restricted plaintiff to non-stressful work, was supported by the clinical findings of an examining psychiatrist and plaintiff's hearing testimony); *Cook v. Comm'r of Soc. Sec.*, 818 Fed. Appx. 108 (2d Cir. Aug. 28, 2020), (affirming the Commissioner where the record contained no medical opinion assessing the specific restrictions reflected in the RFC determination, observing that treatment notes were in line with the ALJ's determination); *Corbiere v. Berryhill*, 760 Fed. Appx. 54, 56 (2d Cir Jan. 23, 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly speaking to the physical portion of the RFC determination of sedentary work, and relying, instead, on the relevant medical findings in the treatment notes); *Monroe v. Comm'r of Soc. Sec*, 676 Fed. Appx. 5, 9 (2d Cir. 2017) (ALJ could rely on treatment notes and activities of daily living to formulate the RFC assessment, and

rejecting the argument that a medical opinion was required); *Johnson v. Colvin*, 669 Fed. Appx. 44, 46 (2d Cir. 2016) (ALJ looks to "all of the relevant medical and other evidence" including relevant medical reports, medical history, and statements from the claimant when assessing an applicant's RFC).

Here, the ALJ relied, in part, upon plaintiff's treatment notes to conclude that she could perform a range of light work with limitations. (Tr. 143) The ALJ acknowledged plaintiff's surgery in December, 2016, to repair a right-ankle fracture sustained while roller-skating with her granddaughter. (Tr. 143, 148; *see* Tr. 571) After her ankle fracture but prior to her scheduled surgery, plaintiff still retained the functional ability to walk up a flight of steps or a hill. (Tr. 534 ["Patient's functional capacity: Can walk up a flight of steps or a hill (4 METs)"]) The ankle surgery was successful. (Tr. 148) As the ALJ cited, by January 3, 2017, plaintiff had intact sensation in her toes, she was advised to weight bear as tolerated and to wean off her walker, and x-rays showed evidence of good position of the hardware. (Tr. 148; *see* Tr. 483-84) By March 9, 2017, she had "near[ly] full" range of motion of her ankle and no tenderness. (Tr. 485) In April, 2017, plaintiff ambulated with a cane, but had stopped using it at a June, 2017 follow-up appointment. (Tr. 148) At follow-up appointments, plaintiff was able to walk independently with antalgic gait. (Tr. 148; *see* Tr. 630, 635, 641, 648, 654, 692, 696) In sum, plaintiff has not shown that her right-ankle impairment resulted in work-related limitations beyond those included in the RFC finding.

The ALJ also discussed that plaintiff had a cervical and lumbar spine impairment that resulted in reduced range of motion of her neck and back. (Tr. 147-48) The ALJ noted that the record contained evidence of complaints of pain and some abnormal

examination findings, but also revealed multiple unremarkable examination findings, such as full (5/5) motor strength, intact or mostly intact sensation (except for occasional decreased sensation along the S1 dermatone), equal reflexes, negative straight leg raising, normal or independent gait, normal coordination, full range of motion of neck and back, and functional range of motion of her shoulder. (Tr. 147-51; *see* Tr. 523-700)

In finding that plaintiff could perform light work, the ALJ also relied on plaintiff's activities of daily living, as she was permitted to do. Plaintiff drove, folded laundry, cooked simple meals, shopped, went out with her husband, attended to her personal care and grooming, helped her granddaughter roller-skate, and climbed the stairs of her two-story home daily. (Tr. 144, 148, 149; *see* Tr. 198-99, 206-7, 213, 471, 473, 522, 677)   Courts have found that the ability to do routine daily activities, such as plaintiff's, can support a finding of light work. *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (holding that the ALJ properly considered the claimant's reported daily activities, such as walking her dog and cleaning her house, in support of an RFC finding for light work); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (the claimant's varied activities, including occasional vacuuming, washing dishes, driving, watching television, reading, and using the computer, supported an RFC finding for light work); *see Ortiz v. Saul*, No. 19-cv-00942, 2020 WL 1150213, at *1 (S.D.N.Y. Mar. 10, 2020) ("Plaintiff's ability to perform a range of light household chores, including cooking, shopping, cleaning, and laundry . . . support[s] a light work RFC finding."). Thus, plaintiff has also not shown that her neck and back impairment resulted in work-related limitations beyond those included in the RFC finding.

The ALJ observed that from December, 2017, through the date of the administrative hearing, plaintiff worked part-time as a cleaner of a medical building, which required her to dust, mop, and lift a vacuum cleaner weighing 30 pounds, albeit with some difficulty and some breaks. (Tr. 150, *see* 200-01, 677, 686)  Although the ALJ found that the work was not substantial gainful activity, she nonetheless appropriately considered it in determining that plaintiff retained the ability to work.  20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *see Rivers v. Astrue*, 280 Fed. Appx. 20, 23 (2d Cir. 2008) (though claimant's work during the relevant period did not meet the threshold for substantial gainful activity, he worked at levels consistent with light work); *see Cabrero-Gonzalez v. Colvin*, No. 13-CV-6184, 2014 WL 7359027, at *19 (W.D.N.Y. Dec. 23, 2014) (ALJ appropriately discredited claimant's allegations in part because he worked after his alleged disability onset date).

In light of plaintiff's ability to do routine activities, work part-time, and record evidence of normal examination findings, the ALJ reasonably determined that plaintiff has not met her burden of showing that she could not perform her past relevant light work.[7] *See, e.g., Vought v. Saul*, No. 18-CV-1435, 2020 WL 3410837, at *5 (W.D.N.Y. June 19, 2020) (RFC supported by substantial evidence where ALJ could relied on the plaintiff's statements about his daily activities); *Schrader v. Saul*, No. 18-CV- 898, 2020 WL 2847276, at *6-7 (W.D.N.Y. June 2, 2020) (RFC supported by substantial evidence where ALJ was "justified to formulate the RFC based on the observations and evaluations contained in plaintiff's treatment record and complete medical history.").

---

[7] Plaintiff's past work as a janitor was categorized as medium, unskilled work.  (Tr. 152)

Finally, plaintiff's argument that the ALJ had a duty to further develop the record must be also be rejected. (Dkt. No. 10-1 at 13)  *See* 20 C.F.R. § 404.1520b(b)(1) ("If any of the evidence in your case record, including any medical opinions, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have").  "The ALJ is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 Fed. Appx. 33, 34 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)) (internal citations omitted); *see Abbott v. Colvin*, 596 Fed. Appx. 21 (2d Cir. 2015) (ALJ did not err in failing to seek additional information from a treating source because there were no obvious gaps in the record); *Lowry v. Astrue*, 474 Fed. Appx. 801, 804 (2d Cir. 2012) (ALJ was not required to re-contact treating source for a medical source statement because the record contained complete medical history); *see also Monroe*, 676 Fed. Appx. at 9 (a medical source statement or formal medical opinion was not necessarily required where the record contains sufficient evidence from which an ALJ can assess the RFC).   As discussed above, the ALJ had plaintiff's available treatment records, questionnaire responses, and hearing testimony regarding her symptoms and ability to function sufficient to formulate the RFC.

For all of these reasons, the ALJ's decision is supported by substantial evidence and free of legal error.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      April 19, 2021
            Buffalo, New York

                                          MICHAEL J. ROEMER
                                          United States Magistrate Judge

14